

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-11-00017-CR

---

MARICELA RODRIGUEZ GUTIERREZ, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 7th Judicial District Court
Smith County, Texas
Trial Court No. 007-80280-99

---

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

On May 12, 2004, when Maricela Rodriguez Gutierrez was placed on community supervision,[1] she agreed her community supervision status would subject her to twenty-nine supervisory conditions.[2] Fifteen of those conditions were general conditions, seven were financial, two were drug-related, two were education-related, and three were immigration-related. Only one of those conditions—immigration-related—is at issue here.

At the time the trial court heard the State's motion to revoke[3] Gutierrez' community supervision, the sole evidence was that she had violated a single condition—that she failed to leave the United States after not obtaining legalized immigration status by a stated deadline.

---

[1]Gutierrez was convicted for possession of a controlled substance, and placed on ten years' community supervision. Her conviction was pursuant to a plea agreement. The written order containing the conditions of her community supervision, consistent with the oral order, required her to contact legal authorities within ten days to start proceedings for legalization of her immigration status and complete filing of all paperwork within ninety days. The written order then went far beyond the oral pronouncement, ordering her at the end of twelve months, if she did not obtain legal status, to leave the country and reside "in a location where you do have a legally authorized status." It appears that, during the following four years, she took various actions, filed the requisite paperwork, and obtained extensions from the trial court, but did not obtain a legally authorized status in the United States or leave the country. Her counsel stated at the revocation hearing that she had four children who were United States citizens, two of whom have Down's Syndrome. It appears that she sought a legalized immigration status based on her relationship with a person legally within this country.

[2]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[3]In July 2010, the State filed a motion to revoke. The State alleged two violations, but abandoned its claim that she had failed to file the requisite paperwork to seek legal status. The State proceeded based on her failure to meet one requirement of the conditions of her community supervision: in the absence of obtaining permission from the federal authorities to remain formally in the country, she broke the terms of her community supervision by failing to leave the country and reside in a location where she had a legally authorized status. She pled true to the allegation. The trial court revoked her community supervision and sentenced her to five years' confinement.

Interestingly, the State did not allege that she had violated condition number one, obeying the law. Finding only that condition sixty was violated—her failure to leave the country after failing to get legal status by a stated deadline—the trial court revoked Gutierrez's community supervision December 1, 2010.

On appeal, Gutierrez argues that the term requiring that she leave the United States was void and, thus, cannot support her revocation. Because the federal government has exclusive jurisdiction to deport or accept immigrants, we must agree. Thus, we reverse the revocation and render judgment that Gutierrez's community supervision not be revoked on this basis.

Two major principles collide in this appeal.

The first major principle is that, under Texas law, an award of community supervision is not a right, but a contractual privilege; and its conditions are terms of the contract entered into between the trial court and the defendant. Therefore, conditions to which the defendant does not object are affirmatively accepted as terms of the contract. *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999). They are part of the judgment, but not part of the sentence. *Id.* Consistent with that concept, under Texas law, a defendant is sentenced, but the sentence is suspended and the defendant is placed on community supervision pursuant to the conditions of community supervision.

The other major principle in this case—the one that must have supremacy here—is that the regulation of immigration is unquestionably exclusively a federal power. *De Canas v. Bica*, 424

3

U.S. 351, 354 (1976). This has been recognized explicitly by the Texas Court of Criminal Appeals. *See Hernandez v. State*, 613 S.W.2d 287, 290 (Tex. Crim. App. 1981) (op. on reh'g).

At the time her community supervision was imposed, Gutierrez made no objection that the terms and conditions were unlawful, and did not appeal from that judgment. Under normal conditions, a defendant cannot complain about community supervision conditions for the first time on appeal from revocation. *Speth*, 6 S.W.3d at 535; *Lindley v. State*, 331 S.W.3d 1, 5 (Tex. App.—Texarkana 2010, no pet.).[4] One exception to this general rule that appellant relies on is that for a "void judgment," which is a nullity and can be attacked at any time. *See Nix v. State*, 65 S.W.3d 664, 667–69 (Tex. Crim. App. 2001); *Crume v. State*, 342 S.W.3d 241 (Tex. App.—Beaumont 2011, no pet.); *Martinez v. State*, 194 S.W.3d 699, 701 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Under that exception, where an original judgment imposing community supervision is void, there is no judgment imposing community supervision, and, accordingly, nothing to revoke. *Nix*, 65 S.W.3d at 668–69. As discussed below, there is also a question of whether a condition that is void may be enforced—under more than one theory of law.

Here, the judgment itself cannot be considered void. The conditions of community supervision ancillary to the judgment contain a term that, if directly attacked, would certainly be found unlawful. A void judgment, however, is a different creature.

---

[4]An appeal from an order revoking community supervision is limited to the propriety of the revocation. *Corley v. State*, 782 S.W.2d 859, 860, n.2 (Tex. Crim. App. 1989). In such appeals, the court has allowed defendants the opportunity to raise errors made at the plea hearing but, as in all other collateral attacks on a judgment, the defendant is restricted to pleading and proving fundamental error that makes the judgment void. *Traylor v. State*, 561 S.W.2d 492, 494 (Tex. Crim. App. 1978).

> But a judgment is void only in very rare situations—usually due to a lack of jurisdiction. In civil cases, a judgment is void only when there was "no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter a particular judgment, or no capacity to act as a court." This rule is essentially paralleled in criminal cases. A judgment of conviction for a crime is void when (1) the document purporting to be a charging instrument (i.e. indictment, information, or complaint) does not satisfy the constitutional requisites of a charging instrument, thus the trial court has no jurisdiction over the defendant, (2) the trial court lacks subject matter jurisdiction over the offense charged, such as when a misdemeanor involving official misconduct is tried in a county court at law, (3) the record reflects that there is no evidence to support the conviction, or (4) an indigent defendant is required to face criminal trial proceedings without appointed counsel, when such has not been waived, in violation of *Gideon v. Wainwright*. While we hesitate to call this an exclusive list, it is very nearly so.

*Nix*, 65 S.W.3d at 668. Under that description, we cannot agree that the judgment in this case is void. At most, the one condition used to revoke Gutierrez' community supervision was outside the authority or power of the trial court to impose. As it could be easily severed from the entirety of the judgment, such a fact does not make the entire judgment void.

Factually, this situation is very similar to that described in *Hernandez*. *See Hernandez*, 613 S.W.2d at 290. As in *Hernandez*, Gutierrez did not appeal from the order placing her on community supervision, but instead appeals from the revocation of community supervision. As in *Hernandez*, community supervision was revoked based on a single alleged violation of the conditions of supervision—the condition requiring the alien defendant to leave the United States. In both cases, we have a state court intruding into an area exclusively within the authority of the federal government—and at that, within the authority of the executive branch, not even of the federal judiciary.

5

In *Hernandez*, the Texas Court of Criminal Appeals did not discuss the contractual nature of conditions of community supervision.[5]   It also did not apply any theory of preservation of error. The high court instead directly addressed the issue, focusing on the trial court's total lack of authority to impose any such condition and noting that the only reasons for revoking community supervision in that case were violations of conditions the trial court had no power to impose in the first place.

After providing a concise explanation of the supremacy of the national power over immigration, naturalization, and deportation based on the Supremacy Clause of the United States Constitution, the court held that the conditions of community supervision ordering Hernandez to remain in the Republic of Mexico and not to re-enter the United States without prior written consent of the trial court were void.   Based on that determination, the high court then held that, since community supervision was revoked only for violations of these two conditions, the revocation could not stand.   *Hernandez*, 613 S.W.2d at 290.

The sole distinction between these cases lies in the fact that Gutierrez, unlike Hernandez, did not go to Mexico and then return.   In the present case, Gutierrez did not obey the trial court's directive to go to Mexico unless she obtained legal status allowing her to lawfully remain in the United States—and the court found that she had violated a term of her community supervision by

---

[5]At that time, as now, the courts recognized that, when a trial court grants community supervision, the court and the probationer have a contractual relationship, and the conditions of community supervision should be clearly set forth in the court's judgments and orders so that the probationer and the authorities know the conditions with certainty. *McDonald v. State*, 442 S.W.2d 386, 387 (Tex. Crim. App. 1969).

failing to leave. Although the distinction does exist, it is a distinction that makes no difference.

Accordingly, the outcome of this appeal turns solely on whether, despite *Hernandez*, we conclude that this issue was waived.

The State properly acknowledges the authority of the Federal government over all matters involving immigration and deportation. The State's argument is based on concepts of waiver and preservation. In short, the State argues that, since Gutierrez did not complain about an unlawfully imposed condition at the time it was imposed, she cannot complain about it now. There is support for that position. In *Speth*, a 1999 decision, it was recognized that a trial court abuses its discretion by imposing unlawful conditions on community supervision. *Speth*, 6 S.W.3d at 534.

> Thus, by entering into the contractual relationship without objection, a defendant affirmatively waives any rights encroached upon by the terms of the contract. A defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions he finds objectionable.

*Id*. As the exact language used is of some importance, we quote:

> We do not hold that a trial court does not abuse its discretion by imposing conditions that are unreasonable or violate constitutional rights or statutory provisions. But such defects must be timely objected to in order to be raised on appeal.

*Id*. at 534 n.10. That language categorically states that, even violations of constitutional rights must be objected to, else the defendant risks waiver.[6]

---

[6]This language would not assist a party in understanding how or when to seek relief when a court later adds new conditions or amends conditions already in existence.

In this case, the trial court did not inform Gutierrez of the existence of this condition in open court during the plea proceeding. Thus, it would be impossible to have objected at trial. The condition was imposed as one of the written conditions, which were signed by the defendant and judge on the date of the judgment: May 12, 2004. The record, however, also contains no later effort to bring the error to the trial court's attention.

*Hernandez* has not been discussed or otherwise addressed by a Texas court, except in 1997, when the San Antonio Court of Appeals, in an unpublished opinion, simply noted that, if a noncitizen defendant went to his or her native country, but then re-entered the United States illegally, he or she would violate the law, and that violation could violate the terms of community supervision. *See Mancha v. State*, No. 04-95-00849-CR, 1997 WL 214823, at *2–3 (Tex. App.—San Antonio Apr. 30, 1997, no pet.) (mem. op., not designated for publication). *Hernandez*, therefore, remains controlling authority requiring reversal of this case, unless we determine that *Speth* and its progeny overruled the analysis *sub silentio*.

After examining the two cases, we do not believe that *Speth* and *Hernandez* are mutually exclusive. The language in *Speth* that appears to control the outcome says:

> An award of community supervision is not a right, but a contractual privilege, and conditions thereof are terms of the contract entered into between the trial court and the defendant. Therefore, conditions not objected to are affirmatively accepted as terms of the contract.

*Speth*, 6 S.W.3d 530, 534.

8

> We do not hold that a trial court does not abuse its discretion by imposing conditions that are unreasonable or violate constitutional rights or statutory provisions. But such defects must be timely objected to in order to be raised on appeal.

*Id*. at 534 n.10. *Hernandez* holds that

> the conditions of probation that ordered appellant to remain in the Republic of Mexico and not re-enter the United States without prior written consent of the court are void. Since probation was revoked only for violations of these conditions, it was an abuse of discretion to revoke probation.

*Hernandez*, 613 S.W.2d at 290. According to *Speth*, you can contract for, and be bound by, unconstitutional conditions of community supervision, such conditions being described by the court as a "defect." Failure to object results in waiver of the defect. But *Hernandez* says the trial court had no power to do what it did. According to *Hernandez*, the unlawful condition, one the court had no authority to employ, was void and thus could not be enforced. The condition is not merely unreasonable, and it does not merely violate a constitutional right of the defendant. It violates the exclusive authority of the United States of America to absolutely control immigration to, and banishment from, the United States. The condition itself violated the Supremacy Clause of the United States Constitution.

Accordingly, we conclude, in accordance with *Hernandez*, that the condition is void, and that the revocation, premised solely on Gutierrez' violation of that condition, cannot stand.

We reverse the order revoking Gutierrez' community supervision.

Josh R. Morriss, III
Chief Justice

Date Submitted:     September 12, 2011
Date Decided:       October 7, 2011

Publish